NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
ANTHONY CONTORNO,                   :
                                    :
              Plaintiff,            :     Civil Action No. 07-5865 (JAP)
         v.                         :
                                    :
WILINE NETWORKS, INC.,              :     **OPINION**
                                    :
              Defendant.            :
_____:

APPEARANCES:

Steven Bennett Blau, Esq.
Jason T. Brown, Esq.
Blau, Brown & Leonard, LLC
304 Newark Avenue
Jersey City, New Jersey 07302
     *Attorneys for Plaintiff*

Robert E. Bartkus, Esq.
Robert P. Lewis, Esq.
Dillon, Bitar & Luther, LLC
P.O. Box 398
53 Maple Avenue
Morristown, New Jersey 07963-0398
     *Attorneys for Defendant*

PISANO, District Judge.

Presently before the Court is a motion by Defendant WiLine Networks, Inc. ("Defendant") to compel arbitration and to dismiss, or alternatively to stay, the action pending arbitration. Plaintiff Anthony Contorno ("Plaintiff") opposes the motion. For the reasons set forth herein, the Court grants Defendant's motion to compel arbitration and stays the action

pending arbitration.

**I.     BACKGROUND**

This action arises from allegations that Defendant, Plaintiff's former employer, withheld overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") and N.J.S.A. 34:11-56a *et seq.*  Defendant, incorporated in California, is engaged in the business of providing "high speed internet access, private network services[,] and digital technology over a fixed wireless broadband network."  (Complaint ("Cmplt.") ¶¶ 6-7, 14).  From June 1, 2005 to July 13, 2007, Defendant employed Plaintiff as a Manager of Customer Support.  (Cmplt. ¶ 14).  According to Plaintiff, Defendant "intentionally and knowingly treated Plaintiff . . . as exempt" from entitlement to overtime payments under federal and New Jersey law.  (Cmplt. ¶¶ 17-18).  Thus, Defendant never paid overtime wages to Plaintiff during the period of Plaintiff's employment.  (Cmplt. ¶ 21).  In addition to claims arising under federal and state statutory law, Plaintiff also asserts a common law claim of unjust enrichment.  (Cmplt. ¶ 33).

As part of the employment relationship, Plaintiff executed an employment agreement on May 18, 2005.  (David Hertgen Declaration Feb. 5, 2008 ("Hertgen Decl.") Ex. A).  That agreement includes a "Mutual Agreement to Arbitrate Disputes[,]" whereby Plaintiff and Defendant agreed to submit certain claims arising from the employment relationship to binding arbitration.  (Hertgen Decl. Ex. A at 2).  The arbitration clause states

> You and the Company mutually agree to arbitrate before a neutral arbitrator any and all disputes or claims arising out of or in connection with the formation, interpretation or claimed breach of this agreement and any and all disputes or claims arising from or relating to your recruitment to or employment with the Company, or the termination of that employment, including claims against any current or former agent or employee of the Company, whether the disputes or claims arise in tort, contract, or pursuant to a statute, regulation or ordinance now in existence or which

> may in the future be enacted or recognized, including without limitation, the following: . . . claims for non-payment or incorrect payment of wages, bonuses, severance, employee fringe benefits, stock options and the like.

(Hertgen Decl. Ex. A at 2).  The agreement expressly excludes from arbitration: (1) "claims for workers' compensation benefits, unemployment insurance, or state or federal disability insurance;" (2) "claims concerning the validity, infringement, enforceability, or misappropriation of any trade secret, patent right, copyright, trademark, or any other intellectual or confidential property held or sought by you or the Company;" and (3) "any other dispute or claim that has been expressly excluded from arbitration by statute."  (Hertgen Decl. Ex. A at 2).

According to the agreement, all claims subject to that arbitration clause must be arbitrated in San Francisco, California, and the arbitrator must apply California law.  (Hertgen Decl. Ex. A at 3).  The clause also provides that Defendant and Plaintiff "shall each pay one-half of the costs of the arbitrator's fee and any other type of expense or cost that [Plaintiff] would be required to bear if [Plaintiff] were free to bring the dispute(s) or claim(s) in court as well as any other expense or cost that is unique to arbitration, unless otherwise required by law."  (Hertgen Decl. Ex. A at 3).  Finally, the employment agreement also emphasizes that, by signing the agreement, Plaintiff "knowingly and voluntarily waive[s his] right to a jury trial with respect to all matters subject to arbitration as provided in this arbitration provision."  (Hertgen Decl. Ex. A at 3).

Presently, Defendant moves to enforce the arbitration clause and to dismiss the action pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, and Federal Rule of Civil Procedure 12(b)(6), respectively.  Defendant argues that Plaintiff's claim for unpaid overtime wages is a claim for "non-payment or incorrect payment of wages" within the meaning of the arbitration clause.  Defendant submits that the Court should review the enforceability of the arbitration

clause under New Jersey law. Plaintiff opposes the motion, contending that the Court should apply California law and that, under California law, the arbitration agreement is unenforceable. Plaintiff submits that the subject arbitration clause is both procedurally and substantively unconscionable because the employment agreement is a one-sided contract of adhesion favoring Defendant. Because the agreement is unconscionable, Plaintiff contends, the Court, applying California law, cannot enforce the arbitration clause.

## II.  DISCUSSION

### A.  Standard of Review under Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. On a motion to dismiss, the Court "must accept as true all factual allegations in the . . . complaint and all reasonable inferences that can be drawn from them." *Banks v. Wolk*, 918 F.2d 418, 419 (3d Cir. 1990). Nevertheless, recently refashioning the appropriate standard, the Supreme Court of the United States found that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "[f]actual

allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, *supra*, 127 S. Ct. at 1965 (internal citations and footnote omitted).

    **B.**    **Analysis**

The FAA governs agreements to arbitrate. Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA aims "'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Gay v. CreditInform*, 511 F.3d 369, 378 (3d Cir. 2007) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The FAA evinces a "federal policy favoring arbitration." *Johnson v. W. Suburban Bank*, 225 F.3d 366, 371 (3d Cir. 2000). Due to the strong presumption in favor of arbitration, a court must construe all doubts in favor of arbitration. *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997). To enforce an arbitration agreement under section 2 of the FAA, the Court must decide only "whether there was an agreement to arbitrate, and if so, whether the agreement is valid." *Ibid.*

As a threshold matter, the Court finds that there was an agreement to arbitrate between Plaintiff and Defendant and that the agreement is subject to the FAA. Moreover, Plaintiff's claims asserted in this action implicate the arbitration provision; that is, Plaintiff's action to recover unpaid overtime wages constitute "claims for non-payment or incorrect payment of wages" within the meaning of the arbitration agreement. Indeed, neither party contends otherwise. Rather, Plaintiff submits that, despite the existence of the agreement, the arbitration

clause is invalid and, thus, unenforceable. Thus, the Court must determine whether the arbitration agreement in Plaintiff's employment contract is valid.

To determine whether the agreement in issue here is unconscionable, the Court must apply state law. Although "[t]he effect of [section 2 of the FAA] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act[,]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), "[t]he FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate[,]" *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Accordingly, to determine "whether the parties agreed to arbitrate a certain matter. . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Gay*, *supra*, 511 F.3d at 387 ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." (internal quotation marks omitted)). Furthermore, "courts may look in particular to the laws of the involved state[.]" *Gay*, *supra*, 511 F.3d at 387.

Here, Plaintiff seeks to apply California law, while Defendant argues that New Jersey law applies to determine whether the arbitration agreement is valid. According to Defendant, the employment agreement merely provides that *the arbitrator* will apply California law and does not require the Court to apply California law. Generally, courts "respect the choice of law that parties agree upon to resolve their private disputes." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 155 (3d Cir. 2001). Here, Defendant aptly points out that there is no choice-of-law provision governing the entire employment agreement. Rather, the agreement simply sets forth that an

arbitrator would review claims under California law.  Accordingly, the Court applies the law of the forum—New Jersey—to determine whether the arbitration agreement is valid.

New Jersey courts may decline to enforce unconscionable contracts.  *Muhammad v. County Bank of Rehoboth Beach, Del.*, 189 N.J. 1, 15 (2006).  Generally, unconscionability entails both procedural unconscionability and substantive unconscionability.  *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 565 (N.J. Super. Ct. Ch. Div. 2002).  Further, a contract of adhesion is an indicia of procedural unconscionability.  *Mohammed*, *supra*, 189 N.J. at 15.  "The essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the adhering party to negotiate except perhaps on a few particulars."  *Ibid.* (internal quotation marks omitted).

However, not all contracts of adhesion are unenforceable.  *Ibid.*  Rather, there must exist substantive unconscionability in a contract of adhesion to be unenforceable.  *Id.* at 16.  To determine whether to enforce the terms of a contract of adhesion, New Jersey courts must consider: (1) the subject matter of the contract; (2) the parties' relative bargaining positions; (3) the degree of economic compulsion; and (4) the public interests affected by the contract.  *Id.* at 15-16 (quoting *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 127 N.J. 344, 354 (1992)).  These four factors essentially embody the fact-sensitive inquiry necessary to determine substantive unconscionability, *Mohammed*, *supra*, 189 N.J. at 16, and are consonant with the "sliding-scale approach [used] to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability[,]" *Delta Funding Corp. v. Harris*, 189 N.J. 28, 40 (2006).

Applying those principles here, the Court finds that, although the employment agreement

was provided on a take-it-or-leave-it basis, Plaintiff willingly and voluntarily accepted the terms after discussing them with Defendant's principals. *See Great W. Mortgage Corp.*, *supra*, 110 F.3d at 228-29 (rejecting employee-plaintiff's argument that her employer-defendant coerced her into signing employment agreement containing arbitration clause). The agreement itself informed Plaintiff of his right to discuss its terms with Defendant's President, David Hertgen. The letter agreement invited Plaintiff to contact Mr. Hertgen "if [Plaintiff] wish[ed] to discuss any of the details of this offer." (Hertgen Decl. Ex. A at 4). In fact, Plaintiff admits that he had consulted with Mr. Hertgen, and Kevin McGuire, regarding the provisions of the employment agreement. (Plaintiff Declaration March 5, 2008 ("Pl. Decl.") ¶ 6). Moreover, by signing the letter agreement, Plaintiff expressed his understanding and acceptance of the terms provided therein, and that he signed the agreement "voluntarily and freely." (Hertgen Decl. Ex. A at 4). Although Defendant conditioned Plaintiff's employment on his signing the agreement, Defendant did provide Plaintiff an opportunity to discuss the provisions provided within the agreement, and Plaintiff willingly consented. *Hemberger v. E*Trade Fin. Corp.*, 2007 WL 4166012, *4 (D.N.J. Nov. 19, 2007) ("A valid agreement to arbitrate employment disputes is binding on an employee who has knowingly waived the right to bring such disputes before a court and has clearly agreed to the terms of the arbitration agreement."). Accordingly, the Court finds that the arbitration clause was a form of a contract of adhesion but did not rise to the level of procedural unconscionability.

Moreover, the Court finds that Plaintiff has not made a showing of substantive unconscionability. To establish substantive unconscionability, Plaintiff points to the following provisions in the arbitration agreement: (1) the claims subject to arbitration; (2) the cost of

arbitration, including the arbitrator's fees; and (3) the severability clause.[1] According to Plaintiff, the arbitration clause essentially requires that he waive his rights under the FLSA. Plaintiff also submits that he cannot afford to bear the costs of arbitration.

Applying New Jersey's four-pronged analysis to Plaintiff's arguments for substantive unconscionability, the Court holds that the arbitration agreement is not unconscionable. New Jersey courts do not consider inequality of bargaining power sufficient to show unconscionability of arbitration agreements in the employment context. *Hemberger*, *supra*, 2007 WL 4166012 at *5. Despite "the adhesive effect of arbitration provisions in employment applications or employment agreements[, courts nonetheless] uph[o]ld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee." *Ibid.* To suggest that the arbitration clause here is unconscionable, Plaintiff would have to show that exceptional circumstances or economic hardships existed. *Ibid.*

Here, Plaintiff has not established that any exceptional circumstances existed in his acceptance of the arbitration agreement. Defendant provided Plaintiff with time to review the employment agreement in its entirety and offered to engage in a conversation regarding the terms.

Moreover, the arbitration agreement is not invalid because it provides for equal sharing of costs. The Supreme Court of the United States has "held that where 'a party seeks to invalidate

---

[1] Plaintiff also claims that the agreement prohibits administrative actions. However, the agreement clearly makes no such prohibition; it states that "nothing in this arbitration provision should be interpreted as restricting or prohibiting you from filing a charge or complaint with a federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation." (Hertgen Decl. Ex. A at 2).

an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.'" *Lucey v. FedEx Ground Package Sys., Inc.*, 2007 WL 3052997, *9 (D.N.J. Oct. 18, 2007) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)). The Court must consider the facts, focusing on "the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Ibid.* (internal quotation marks omitted).

In his opposition to Defendant's motion, Plaintiff certifies that the arbitration would be prohibitively expensive. He avers that his estimated costs of litigating his claim before an arbitrator in California would equal thirty-two percent of his gross salary earned in 2007. Plaintiff also states that he has "substantial debts" that preclude him from expending the significant sums necessary to pay his half of the costs of arbitration. Finally, Plaintiff submits that if he were to bear his share of the arbitration costs, the costs would likely exceed his claim for overtime wages. Defendant replies that, if the Court does find the fee-sharing provision to be unconscionable, the Court should sever that provision and enforce the remainder of the arbitration provision.

Considering the totality of the facts, the Court finds that Plaintiff has established that his sharing of costs of the arbitration of his overtime wage claim would be prohibitively expense. As a result, the Court must conclude that the fee-sharing provision of the arbitration agreement is unconscionable. However, the Court finds that, notwithstanding that provision, the remaining agreement remains valid. New Jersey courts permit severance of "illegal portion[s] of a contract that] do[] not defeat the central purpose of the contract[.]" *Jacob v. Norris, McLaughlin &*

*Marcus*, 128 N.J. 10, 33 (1992).  Once severed, a court should enforce the remaining valid portions of the contract.  *Ibid.*  Accordingly, the Court applies that concept here and severs the unconscionable fee-sharing provision from the remaining enforceable arbitration agreement.  *Accord Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 220 (3d Cir. 2003) (reaching same result under Pennsylvania law).  The Court finds that Defendant shall bear the costs of arbitration.  *See ibid.*

### III. CONCLUSION

For the reasons expressed above, the Court concludes that the arbitration agreement is valid and enforceable, but strikes the provision requiring Plaintiff to bear one-half of the costs arbitration.  Therefore, the Court grants Defendant's motion to compel arbitration, orders the parties to submit to arbitration in accordance with the employment agreement, and orders that Defendant shall bear the costs of arbitration.  Finally, the Court stays the action pending arbitration pursuant to 9 U.S.C. § 3.  An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: May 1, 2008